UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID A. ABKE, JOELLE A. ABKE,

        Plaintiffs,

                                        Case Number 09-10487

v.                                   Honorable Thomas L. Ludington

JESSICA L. ESTES, BYRD &
BYRD, LLC,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DISMISSING PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE, AND CANCELING HEARING

On or about December 3, 2008, Plaintiffs David A. Abke and Joelle A. Abke filed a complaint against Defendants Jessica L. Estes, and Byrd & Byrd, LLC, alleging one count of professional negligence and legal malpractice. Defendants represent that Plaintiffs served them with the complaint on January 14, 2009. On February 9, 2009, Defendants removed the case to this Court on the basis of diversity jurisdiction.[1] On March 12, 2009, Defendants filed a motion to dismiss [Dkt. # 4], contending that this Court lacks personal jurisdiction over Defendants. The Court has reviewed the parties' submissions of record and finds that the facts and the law have been sufficiently set forth in the papers.[2] The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers

---

[1] At the time that Plaintiffs filed this action, they were, and still are, citizens of Michigan. Defendant Estes is a Maryland citizen. Defendant Byrd and Byrd, LLC, is a limited liability company organized under the laws of Maryland, with its principal place of business in Maryland. The only two members of the LCC, Toby N. Byrd and Jacqueline D. Byrd, reside in Maryland. The amount in controversy exceeds $75,000.

[2] On May 15, 2009, Plaintiffs filed a response [Dkt. # 7] to Defendant's motion. While Plaintiffs' response was nearly six weeks overdue, and Plaintiffs provided no explanation for the tardiness, the Court has reviewed the response.

submitted.  *Compare* E.D. Mich. LR 7.1(e)(2).

I

Plaintiffs' complaint asserts the following facts:

Plaintiffs' claims arise from legal assistance rendered by Defendants to Plaintiffs with respect to a business transaction ("the transaction") in which Plaintiffs sold several businesses owned by them to an individual buyer, Dean Marchese ("the buyer").  Prior to the events giving rise to this lawsuit, Plaintiffs had retained Defendants to assist them with resolving debt issues.  In 2006, when Plaintiffs decided to sell certain businesses and other property, Defendants assisted with the transaction.

According to Plaintiffs, the businesses implicated by the transaction included (1) Seltronics, Inc.; (2) Veteran Communications of Maryland L.L.C.; (3) Veteran Communications of South Carolina L.L.C.; (4) Veteran Communications of Florida L.L.C.; and (5) Veteran Communications of Michigan.  Plaintiffs assert that upon the signing of a purchase agreement, the first four companies were collapsed into the fifth.  Seltronics was owned by the Abby Rose Trust, a Michigan trust, of which Plaintiffs were co-trustees.  Plaintiffs owned the Seltronics stock.  The Veteran Communications companies of Maryland, Florida, and South Carolina were owned by Plaintiff David Abke.  Veterans Communications of Michigan was owed by "a close friend, Mr. Lebron." At some point prior to the sale of the businesses, the assets of the Veteran Communications companies of Maryland, Florida, and South Carolina were transferred to Veteran Communications of Michigan, which was responsible for payroll and employee benefits for Plaintiffs' companies.

Between June and September 2006, Plaintiffs met with the buyer several times, and eventually hired him as a "consultant."  In September 2006, the buyer sent Plaintiffs a formal letter

of intent to purchase.  Over the next three months, Plaintiffs negotiated the specifics of the deal with the buyer.  At some point, Plaintiffs notified Defendant Estes of their intent to sell the companies and certain commercial properties.  Defendant Estes suggested that Plaintiffs send her a copy of the purchase agreement before signing it.  On December 30, 2006, Plaintiffs received a draft of the purchase agreement from the buyer, which they sent to Defendant Estes for review.  On or about January 4, 2007, Plaintiff Joelle Abke asked Defendant Estes to revise the contract to reflect the changes proposed by Defendant Estes.  Defendant Estes revised the contract and returned it to Plaintiffs on or about January 7, 2007.  A few days later, Defendant Estes reviewed the purchase agreement again.  On or around January 22, 2007, Plaintiffs and the buyer signed the purchase agreement in Defendant Estes' office.

Subsequently, the buyer ceased making payments that were required by the agreement. Plaintiffs blame this outcome on professional negligence by Defendants because Defendants did not include in the agreement sufficient protections for Plaintiffs if the buyer defaulted on the agreement. Plaintiffs assert that Defendants breached their duties to Plaintiffs in the following ways:

  a.  Failed to ensure the purchase agreement was written in a manner that sufficiently protected the Abkes' interest;

  b.  Failed to specify in the purchase agreement which Seltronics debts the Abkes personally guaranteed;

  c.  Wrote the purchase agreement in a way that the Abkes faced substantial personal liability if the debts were not paid;

  d.  Failing to include in the purchase agreement, security against the corporation and/or Mr. Marchese so that an obligation existed to make sure the liabilities were paid in full;

  e.  Only requiring Mr. Machese to make a $130,000 down payment on a $2,400,000 purchase, approximately 5% of the total purchase;

  f.  Failing to realize that with so little money down, if Mr. Marchese failed to make payments or defaulted, the Abke's businesses may not be salvageable;

  g.  Failing to advise the Abkes that because Mr. Marchese signed his own name, his

spouse's assets and jointly owned assets would not be subject to claim;

h. Failing to determine whether it was appropriate to have Mr. Marchese's spouse sign as a joint and several obligor;

I. Failing to provide security for payment of the remaining purchase price and to assume payment of the various liabilities;

j. Failing to inform the Abkes about the lack of security in the purchase agreement;

k. Failing to write the agreement in a way that provided an actual lien for the Abkes on the corporation stock being sold in the transaction;

l. Failing to include default provisions in the purchase agreement;

m. Failing to include indemnification provisions in the purchase agreement; and

n. Failing to ensure that Mr. Marchese was unable to terminate Mr. Abke.

Compl. ¶67.

Plaintiffs also allege that approximately six months prior to the signing of the agreement, Plaintiffs had closed their Maryland office and conducted business solely in Michigan. At the time that Defendants represented Plaintiffs, Plaintiff David Abke owned a second home in Michigan. Plaintiffs assert that Defendant Estes made regular contact with Dennis Lewis, an employee of Veterans Communications of Michigan, and that Defendant Estes regularly sent correspondence to Plaintiffs at their residence and office in Michigan.

Defendants advance the following facts in their motion to dismiss and through supporting affidavits and other documents:

Defendant Byrd & Byrd is a five-person law firm located in Bowie, Maryland. Defendant Estes, an attorney of the firm, worked on the transaction implicated by Plaintiffs' claims, along with attorney Toby Byrd. Defendant Estes and two of the other attorneys at the firm are only licensed to practice law in Maryland, and the two remaining attorneys are licensed to practice in Maryland and Washington, D.C. Defendant Byrd & Byrd does not have an office in Michigan, none of the law firm's attorneys are licensed to practice law in Michigan, and none has ever made a professional

appearance or otherwise practiced law in Michigan.  Defendant Estes has never been to Michigan in her adult life and Mr. Byrd has never been to Michigan for professional or business purposes. Byrd & Byrd has never marketed its services in Michigan and has never derived income from clients in Michigan or invoiced a client in Michigan. Neither Defendant Estes nor the firm has tangible or intangible property in Michigan.

When Plaintiffs first retained Byrd & Byrd, LLC, the Abkes resided in Crofton, Maryland. At that time, Plaintiffs signed an engagement agreement in which they agreed to Maryland jurisdiction, to venue in a Maryland county, and to a Maryland choice of law provision.  Seltronics was a Maryland corporation with its principal place of business in Maryland.  Plaintiffs' first meeting with Defendants took place at the firm's Maryland office, as did all other meetings.

In November 2006, Plaintiff David Abke advised Defendant Estes by e-mail that he intended to sell Plaintiffs' business by January 1, 2007.  On December 28, 2006, he advised Defendant Estes that the buyer was preparing a purchase agreement.  Two days later, he sent Defendant Estes a draft purchase agreement prepared by the buyer, and asked Defendant Estes to review it "asap."  During the next three weeks, Defendant Estes reviewed the document, offered advice, and suggested revisions.  Prior to the closing, Defendant Estes was the only attorney from Byrd & Byrd who communicated with Plaintiffs concerning the transaction.

By January 22, 2007, Plaintiffs and the buyer executed the purchase agreement at a closing at the Byrd & Byrd offices in Maryland.  The purchase agreement provided for the sale of all of the stock of Seltronics.  The agreement further provided for the merger of Veteran Communications of Maryland, South Carolina, and Florida - the three companies owned by Plaintiff David Abke - into Seltronics and conveyed them to the buyer as part of the transaction.

-5-

The purchase agreement listed an address for the "Seller," or Plaintiffs, in Crofton, Maryland. The purchase agreement also listed an address for the buyer in Ijamsville, Maryland. The purchase agreement expressly provided that it would be interpreted in accordance with Maryland law and further provided that all required notices were to be sent by certified mail to the parties' Maryland addresses. The only reference in the purchase agreement to Michigan was in paragraph 2.1, which provided for the sale of the "property known as 111 W. Congress Street, Caro, Michigan 48723." Plaintiffs did not own Veteran Communications of Michigan and the sole reference to the company in the agreement states that it is handling payroll and "the 401k plan."

With the exception of the closing, all of Defendant Estes' communications regarding the transaction were via e-mail or the telephone. All of attorney Byrd's communications regarding the transaction took place at the law firm office. Neither Defendant Estes nor anyone else from Byrd & Byrd ever went to Michigan in connection with the transaction or any other matters that the firm handled for Plaintiffs. All of Defendant Estes' correspondence to Plaintiffs was either sent via e-mail or by regular mail to Plaintiffs' address in Crofton, Maryland. All of the law firm's invoices for its services were sent to Plaintiffs' Crofton, Maryland, address.

Prior to the closing of the transaction, Defendant Estes had some contact via e-mail with Plaintiffs during summer 2006, when Plaintiffs were apparently in Michigan. Defendant Estes was aware that Plaintiffs had a business office in Michigan in addition to their Maryland office. Defendant Estes also had e-mail and telephonic contact with Dennis Lewis, an employee of Plaintiffs who was based in Michigan. None of these communications with Lewis or Plaintiffs concerned the transaction.

-6-

II

Motions for dismissal are governed by Rule 12(b) of the Federal Rules of Civil Procedure. A motion to dismiss for lack of personal jurisdiction is brought pursuant to Rule 12(b)(2). In deciding a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings, such as affidavits, without converting the motion to dismiss into a summary judgment motion under Rule 56. If the district court rules on a Rule 12(b)(2) motion before trial, as in this case, it has the discretion to adopt any of the following courses of action: (1) to determine the motions based on affidavits alone; (2) to permit discovery, which would aid in resolution of the motion; or (3) to conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212, 1214 (6th Cir .1989).

The burden rests on the plaintiff to establish the existence of personal jurisdiction over the defendant. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). In satisfying this burden, the "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). However, when determining whether there have been sufficient contacts with the forum state to establish personal jurisdiction, the court must interpret the pleadings and affidavits in the light most favorable to the plaintiff. *Id.* at 1459.

III

A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only after confirming that the state long-arm statute authorizes jurisdiction over the nonresident defendant, and that the exercise of personal jurisdiction would not deny the defendant the constitutional right to due process of law. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484

U.S. 97, 104 (1987). Generally, there are two types of personal jurisdiction: general personal jurisdiction and specific or limited personal jurisdiction. The principles of general jurisdiction are applied when the plaintiff's cause of action is unrelated to the defendant's in-state activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). Specific jurisdiction is applied when the plaintiff's cause of action arises out of the defendant's transactions of business with the forum state. *Id.* at 414 n.8.

In this case, Plaintiffs do not allege that Defendants engaged in any ongoing in-state activities upon which general jurisdiction could be based. Therefore, this Court must determine whether specific personal jurisdiction exists over each Defendant. For the reasons stated below, this Court lacks personal jurisdiction over both Defendants. While Plaintiffs' allegations demonstrate their own connections to Michigan, they do little, if anything, to show that Defendants purposefully availed themselves of the privileges of conducting business in Michigan, or that Plaintiffs' claims arise from any conduct of Defendants within Michigan. Finally, exercise of personal jurisdiction over Defendants would not be reasonable.

Under Michigan's long-arm statute regarding specific jurisdiction over individuals, Mich. Comp. Laws § 600.705(1), and over limited liability companies, *id.* § 600.735(1), personal jurisdiction will attach if a cause of action arises out of the defendant's "transaction of any business within the state." The phrase, "any business within the state," has been interpreted broadly because the term "any" includes "each" and "every" and comprehends even "the slightest" business transactions. *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971). Thus, the Michigan long-arm statute is generally interpreted to reach to the limits of due process.

The due process inquiry asks whether a defendant has established such "minimum contacts"

with the forum state, "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This standard is satisfied, and a defendant is subject to in personam jurisdiction, when contacts with the "forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Sixth Circuit has further refined the due process analysis by setting forth a three-part test to determine whether specific jurisdiction exists over a nonresident defendant. In *Cole v. Mileti*, the court outlined the analysis:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair.

133 F.3d 433, 436 (6th Cir. 1998) (internal citations omitted).

First, Defendants' conduct does not satisfy the requirement of "purposeful availment." "Purposeful availment" occurs when "the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State.' " *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 477, 478 (6th Cir. 2003) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Id.* "Purposeful availment" is "more than a passive availment of the forum state's opportunities," it is a "deliberate undertaking." *Id.*

As Defendants emphasize, all of Defendants' meetings with Plaintiffs took place in

Maryland. Defendant Estes reviewed, edited, and answered Plaintiffs' questions about the purchase agreement in Maryland. The purchase agreement was signed by Plaintiffs and the buyer at the Byrd & Byrd office in Maryland and included a Maryland choice of law clause. The first page of the purchase agreement states that it is a Maryland transaction and lists Plaintiffs' and the buyer's addresses in Maryland. The purchase agreement only mentions Michigan as it pertains to the purchase of 111 W. Congress Street, Caro, Michigan, in a separate transaction between the buyer and the David A. Abke Trust. While Defendant Estes had communications via e-mail and telephone with Plaintiffs and an employee of Plaintiffs while they may have been in Michigan, none of those communications concerned the transaction. Thus, the Court finds that Defendants conduct does not amount to "purposeful availment." *See, e.g.*, *Constantakis v. Law Offices of Patricia Lester Clowdus, P.C.*, No. 07-15350, 2008 WL 1735298 (E.D. Mich. Apr. 14, 2008) (finding that a Colorado attorney's representation of a Michigan client did not establish specific jurisdiction over the client's professional negligence claims against the attorney, although personal jurisdiction may have existed over a fee dispute).

Second, even if Defendants' conduct amounted to purposeful availment, Plaintiffs' claims do not arise from Defendants' activities in Michigan. A cause of action clearly arises from purposeful availment if the cause of action would not exist but for the contacts cited. *See Theunissen*, 935 F.2d at 1461; *Payne v. Motorists' Mutual Ins. Cos.*, 4 F.3d 452, 456 (6th Cir. 1993). Although this does not require that Plaintiffs' claims arise "formally and directly" from Defendants' contacts with Michigan, the claims must still "have a substantial connection with the defendant's in-state activities." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir. 1998). "[W]hen the operative facts of the controversy are not related to the defendant's contact with the state," the

-10-

cause of action does not arise from that contact. *Id.*

In this case, Defendants' activities related to the transaction took place in Maryland. Defendants' email and telephonic communications with Plaintiffs and one of their employees in Michigan did not pertain to the purchase agreement. Moreover, even if Defendants had communications with Plaintiffs about the transaction while they were in Michigan, such contacts still would not be sufficient to support a finding that Plaintiffs' claims arise from Defendants' "in-state activities."

Third, even if Plaintiffs could establish the first two requirements of personal jurisdiction, the exercise of personal jurisdiction would not be reasonable in this case. The reasonableness of asserting jurisdiction is assessed by considering "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest in other states in securing the most efficient resolution of controversies." *Cole*, 133 F.3d at 435. With the possible exception of Plaintiffs' interest in obtaining relief, these factors each support the conclusion that the exercise of personal jurisdiction would not be reasonable, primarily because Defendants' conduct has but a tenuous connection to Michigan. Moreover, Plaintiffs' interest in obtaining relief in Michigan is limited, as the engagement agreement that Plaintiffs signed with Defendants provides that Maryland law governs disputes.

Accordingly, it is **ORDERED** that Defendants' motion to dismiss [Dkt. # 4] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the hearing scheduled for May 20, 2009, is **CANCELED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 18, 2009

-11-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 18, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS